UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SUZANNE MILLER,           )<br>                              )<br>     Plaintiff     )<br>                              )<br>v.                          )<br>                              )<br>MICHAEL J. ASTRUE,     )<br>Commissioner of Social Security,  )<br>                              )<br>     Defendant    ) | Civil No. 09-156-B-W |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises several issues: whether the administrative law judge erred by failing to discuss the functional limitations reported by the plaintiff's treating physician, whether his reasons for rejecting the opinion of her treating surgeon were not based on substantial evidence, and whether his conclusion that there is other work in the national economy that she can perform is supported by substantial evidence. I recommend that the commissioner's decision be vacated.

In accordance with the commissioner's sequential review process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff was insured for SSD only through September 30, 2006, Finding 1, Record at 24; that her combined, but

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on April 2, 2010, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

unidentified, impairments were severe but did not meet or equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id*.; that the plaintiff's allegations regarding her limitations were not totally credible, Finding 5, *id*.; that she retained the residual functional capacity to lift and carry 25 pounds occasionally and 20 pounds frequently, with no restrictions in standing, walking, or sitting, and marked limitations in climbing, stooping, crouching, kneeling, or crawling, frequent limitations in balancing, and no reaching, handling, or pushing on the left above the shoulder, Finding 6, *id*.; that given her age (a younger individual between the ages of 45 and 49), high school education, and residual functional capacity to perform substantially all of the full range of light work, application of Rule 202.22 of Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid") would direct a conclusion of "not disabled," Findings 8-9, 11-12, *id*. at 24-25; and that, using the Grid as a framework for decision-making, the plaintiff could perform the jobs of personal care assistant, medical records clerk, and hospital admitting clerk, Finding 13, *id*. at 25; and that she, therefore, was not under a disability, as that term is defined in the Social Security Act, at any time through the date of the decision, Finding 14, *id.*  The Appeals Council declined to review the decision, *id*. at 7-9, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481, *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## Discussion

### 1. Dr. Davey's Opinion

The plaintiff first attacks the administrative law judge's alleged failure "to even acknowledge" the opinion of her primary care physician, Dr. Kevin Davey.[2]  Plaintiff's Itemized Statement of Errors ("Itemized Statement") (Docket No. 11-1) at 11-12.  Specifically, the plaintiff refers to what she characterizes as Dr. Davey's "medical source statement regarding Mrs. Miller's functional abilities[.]"  *Id*. at 11.  This is a form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" and dated February 14, 2006.  Record at 479-82.

The form was filled out and signed by a physician's assistant.  *Id*. at 482.  A physician's assistant is not an acceptable medical source for purposes of Social Security benefit applications.  However, a physician's assistant may provide evidence of the severity of an impairment, although not of its existence.  20 C.F.R. §§ 404.1513(a) & (d)(1), 416.913(a) & (d)(1); 404.1527(a)(2), 416.927(a)(2).  In addition, the form is apparently countersigned by Dr. Davey.

---

[2] The plaintiff's itemized statement and the administrative law judge's decision at times refer to Dr. Davey as "Dr. Daley."

3

Record at 482.³ Dr. Davey was the plaintiff's treating physician for a time in 2004. *Id*. at 433, 437. Accordingly, the form may be considered to present the conclusions of Dr. Davey about the nature of the plaintiff's medical impairments as well as their severity. *But see Arredondo v. Astrue*, No. CV 09-3738 RNB, 2009 WL 4823859 (C.D.Cal. Dec. 11, 2009) (form filled out by physician's assistant properly disregarded even though countersigned by physician, where physician's assistant generally examined and treated plaintiff and no showing made that physician's assistant was operating as agent of physician or under physician's close supervision).

The only reference to Dr. Davey in the administrative law judge's opinion is the following:

> The claimant moved to Rockland, Maine around February, 2004. There the claimant began treatment with Kevin Da[v]ey, M.D., an internist. The claimant was unable to tolerate the pain in her left shoulder and stopped work as a dishwasher and mailwoman in May, 2004. Due to her continued complaints of persistent left shoulder pain, Dr. Da[v]ey referred the claimant for left rotator cuff repair surgery.

Record at 18 (citations omitted).⁴ As the plaintiff points out, Itemized Statement at 12, Social Security Ruling 96-8p states:

> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.
>     Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to special significance and may be entitled to controlling weight. If a treating source's medical

---

³ Another copy of the same form appears later in the record with the notation "There has been no change in Mrs. Miller's medical/physical limitations since this form was originally completed on 2/14/06." Record at 529. That note is dated December 5, 2006, and signed " J. Waterman, M.D. for J. Coggeshall PA." *Id*. J. Coggeshall, P.A., is the physician's assistant who signed the form on February 14, 2006. There is no indication in the medical records that Dr. Waterman ever treated or examined the plaintiff.

⁴ At oral argument, counsel for the commissioner argued that the administrative law judge's citation to the physician's assistant's report by exhibit number ("See also, Exhibit 26F-4/February 19, 2006" after the statement "[t]he claimant is limited in her ability to tolerate temperature extremes, vibration, humidity and wetness, hazards, and respiratory irritants[,]" Record at 22, was sufficient to show that the administrative law judge "considered" the report under Social Security Ruling 96-8p. As the ensuing discussion in the text of this opinion demonstrates, it was not.

> opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight.

Social Security Ruling 96-8p ("SSR 96-8p"), reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2009), at 150.

The administrative law judge's assessment of the plaintiff's residual functional capacity in this case does not address at all the opinions set forth in the form countersigned by Dr. Davey. Nor can those opinions reasonably be characterized as not conflicting with the residual functional capacity assigned by the administrative law judge. The opinion does not comply with the terms of SSR 96-8p. To be sure, the administrative law judge's opinion cites evidence that supports his conclusions, "the opinions of two examining and one reviewing physicians with the Maine Disability Determination Services." Record at 20. The opinions explain why these opinions are adopted rather than that of the plaintiff's treating surgeon, Dr. Leather. *Id*. at 21-22. But there is no mention of Dr. Davey's findings.

Thus, it is not clear to this court, or to any subsequent reviewer, what weight, if any, the administrative law judge gave to the treating source's medical opinion and, more importantly, the reasons for that weight. 20 C.F.R. §§ 404.1527(d), 416.927(d). This error requires remand. *Ambrose v. Astrue*, No. 07-84-B-W, 2008 WL 648957 (D. Me. Mar. 5, 2008), at *5; *Cogswell v. Barnhart*, No. Civ. 04-171-P-S, 2005 WL 767171 (D. Me. Mar. 14, 2005), at *3-*4. *See also Hively v. Astrue,* Cause No. 3:09-CV-24-TS, 2010 WL 670226 (N.D.Ind. Feb. 18, 2010), at *5-*6; *Balderes v. Astrue,* No. 08-1378-WEB, 2009 WL 3764126 (D. Kan. Nov. 10, 2009), at *4-*5.

I will briefly address the other issues raised by the plaintiff for the benefit of the parties on remand.

## 2. Dr. Leather's Opinions

The plaintiff also contends that the administrative law judge gave insufficient reasons for his rejection of the opinions of Dr. Gregory Leather, an orthopedic surgeon who treated the plaintiff's shoulder and knee. Itemized Statement at 13-16. She attacks each of the reasons listed by the administrative law judge for his conclusion that Dr. Leather's opinion was "not supported as persuasively as the opinions of the Maine Disability Determination Services doctors." Record at 21. Specifically, Dr. Leather completed the same form completed by Dr. Davey's physician's assistant, although Dr. Leather, unlike the physician's assistant, provided no commentary explaining or amplifying the checks he placed in various boxes on the form.

Dr. Leather opined on May 10, 2005, that the plaintiff could lift less than 10 pounds occasionally, could stand and/or walk less than 2 hours in an 8-hour workday,[5] had limitations on pushing and pulling with both upper and lower extremities,[6] could climb stairs only occasionally, could never climb ladders, and could never balance, kneel, crouch, crawl, or stoop,[7] was limited to occasional reaching, handling, and fingering,[8] that her ability to maintain attention and concentration through an 8-hour work day was significantly compromised by pain, and that she had environmental limitations with respect to temperature extremes, vibration, humidity/wetness,

---

[5] Dr. Leather did not provide the "explanation of the precise limitation opined" in this category that is requested by the form. Record at 472.
[6] In response to the form's request that he "describe nature and degree" of these limitations, Dr. Leather wrote "s/p [status-post] rotator cuff repair (see Notes)" and "DJD [Degenerative Joint Disease] L[eft] knee." Record at 473.
[7] Dr. Leather's response to the form's request that he "fully describe and explain" each of these limitations is "(See Notes)." Record at 473,
[8] The form asks how the limited functions are impaired, the basis for the limitations, and the findings that support the doctor's conclusions. Dr. Leather replied: "(See Notes)." Record at 474.

6

hazards such as machinery or heights, and fumes, odors, chemicals, and/or gases.[9] Record at 473-75. The administrative law judge found the following limitations: lifting and carrying 25 pounds occasionally and 20 pounds frequently, "marked limitations" in climbing, stooping, crouching, kneeling, or crawling, and "frequent limitations" in balancing, with no reaching, handling, or pushing on the left above the shoulder. *Id*. at 24.

>   The administrative law judge addressed Dr. Leather's opinion as follows:
> 
> > The degree of impairment found by her treating surgeon: the claimant suffered pain so severe that she could not maintain attention and concentration on work tasks throughout an 8 hour workday and was reduced to less than sedentary work on a sustained basis, is given little weight where 1) the opinion is made on a cursory fill-in-the-blank form[], prepared in support of a claim for secondary benefits, 2) it is based on the claimant's report of her limitations and not evaluated based on the documented medical findings of record, [3]) it fails to account for the beneficial effect of treatment, and [4]) it is contradicted by the conclusions of examining and reviewing physicians at the Maine Disability Determination Service, who are experts in the field of disability determination and whose opinions were based on objective medical findings.

*Id*. at 22.

The plaintiff attacks the first reason based on the assertion that the form completed by Dr. Leather "is very similar to the forms completed by the physicians upon whom the ALJ accorded weight." Itemized Statement at 14. But, the adjective "cursory" is well applied to Dr. Leather's use of the form, while each of the state-agency reviewers provides a narrative discussion of the plaintiff's medical records that is missing from Dr. Leather's form. Record at 185, 500-03 (examining physician). The report of one examining physician upon whom the administrative law judge explicitly relied, *id*. at 20, does not use a form at all, but rather provides a 5-page, single-spaced narrative, *id*. at 415-19. The plaintiff takes nothing on this point.

---

[9] The form asks the person filling out the form to describe how the environmental factors impair activities, to identify the hazards to be avoided, and to discuss the medical findings that support his or her conclusions. Dr. Leathers did not provide a response. Record at 475.

7

Next, the plaintiff asserts that "there is no record support for the ALJ's finding that Dr. Leather relied on Mrs. Miller's report of her limitations and not on the basis of the 'documented medical findings of record.'" Itemized Statement at 14. She goes on to list five entries from the record as "objective evidence which supports Dr. Leather's opinions," *id.*, but that does not address the administrative law judge's point. There may well be some evidence in the record that supports one or more of Dr. Leather's conclusions, but it is not the role of the court, or of the claimant after the fact, to ferret out that information. The administrative law judge's point, with which I agree, is that the form on which Dr. Leather recorded his conclusions gave him many opportunities, if not direction, to indicate the "documented medical findings" on which those conclusions are based, but Dr. Leather chose not to provide that information. A direction to "see notes" is not helpful. Moreover, while it is possible that Dr. Leather relied on "the claimant's report of her limitations" in forming his opinions, that is not clear from his sketchy report either.

The plaintiff rejects the administrative law judge's assertion that Dr. Leather's report "fails to account for the beneficial effect of treatment," Record at 22, with the cursory assertion, unsupported by any citation to the record, that "as a treating specialist who performed surgery on Mrs. Miller, Dr. Leather took his treatment of Mrs. Miller into consideration in rendering his opinion." Itemized Statement at 14. Again, this argument misses the administrative law judge's point. It was not only Dr. Leather's treatment of the plaintiff to which the administrative law judge referred. As his opinion makes clear, after Dr. Leather's surgery on the plaintiff's shoulder, she underwent physical therapy that was "beneficial . . . with excellent range of motion," and was "doing well"; after Dr. Leather's surgery on her knee, the plaintiff underwent eight sessions of physical therapy over a period of four weeks, after which there is no record of

further treatment. Record at 18. This is the "beneficial effect of treatment" which is not mentioned in Dr. Leather's report.

The plaintiff goes on to assert that the other medical evidence in the record is "not inconsistent" with Dr. Leather's opinions, because they are consistent with Dr. Davey's opinions. Itemized Statement at 15. That may well be, but the administrative law judge did not say that all of the medical evidence in the record was inconsistent with Dr. Leather's opinions. He said, quite specifically, that Dr. Leather's opinions were contradicted by those of the examining and reviewing state-agency physicians. Record at 22. That is an accurate statement. The plaintiff points out that some entries in one or more of the state-agency physician reports on which the administrative law judge relied[10] were not consistent with particular findings of the administrative law judge, Itemized Statement at 15, but it is highly unlikely that four reviewing physicians, Record at 146-85, and two examining physicians, *id.* at 415-19, 497-503, would all reach identical conclusions about the plaintiff's physical limitations, and the administrative law judge is entitled to choose those on which he will rely, so long as there is medical evidence to support the chosen conclusions.

In this case, the administrative law judge gave sufficient reasons for choosing the opinions of the state-agency reviewers over those of Dr. Leather. *Powers v. Barnhart*, No. 04-86-P-C, 2004 WL 2862170 (D. Me. Dec. 13, 2004), at *2-*3. He was not required to do more.

### 3. Other Work in the National Economy

While acknowledging that the administrative law judge "appropriately" obtained vocational testimony at the hearing, the plaintiff contends both that the hypothetical question posed to the vocational expert was fatally flawed and that the administrative law judge's failure

---

[10] The plaintiff devotes a paragraph, Itemized Statement at 15, to the opinions of Gary Weaver, M.D., a state-agency reviewing physician whose report is not mentioned in the administrative law judge's opinion.

to ask the expert to list the plaintiff's transferable skills or to identify any such skills in his decision violated Social Security Ruling 82-41. Itemized Statement at 16-22. Either error, the plaintiff asserts, requires remand.

With respect to the hypothetical question posed to the vocational expert by the administrative law judge, the plaintiff attacks the administrative law judge's failure to include "his own finding that Mrs. Miller is limited to 'no reaching, handling or pushing on the left [] above the shoulder.'" *Id*. at 18 (emphasis omitted). The written question submitted to the vocational expert by the administrative law judge asked the expert to assume, *inter alia*, "a frequent limitation in reaching, pushing and pulling above shoulder height." Record at 136.[11] This is inconsistent with the administrative law judge's finding that the plaintiff should undertake *no* reaching, handling, or pushing on the left above the shoulder. *Id*. at 24.

The analysis does not stop there, however. The jobs that the vocational expert testified would be available for the plaintiff, and which the administrative law judge adopted in his opinion, were personal care assistant, medical records clerk, and hospital admitting clerk. *Id*. at 25, 139. The *Dictionary of Occupational Titles* from which the descriptions of these jobs are taken does not specify whether the reaching required will occur above or below the shoulder. All three of the specified jobs, however, require frequent reaching and handling. *Dictionary of Occupational Titles* (U. S. Dep't of Labor 4th ed. 1991) §§ 205.362-018, 245.362-010, 309.674-014. That cannot be deemed consistent with "no reaching, handling or pushing on the left above the shoulder." It is precisely for questions like the one left unasked here – whether the specified

---

[11] The plaintiff also contends that the hypothetical question should have incorporated the "findings" of Dr. Leather and Dr. Davey." Itemized Statement at 19. I have concluded above that the administrative law judge was not required to adopt the opinions of Dr. Leather. The plaintiff does not specify which of Dr. Davey's opinions should have been included in the hypothetical question and would thereby have required "a finding that there is no work in the national economy that could be performed." *Id*. In the absence of that information, I cannot conclude that the plaintiff is correct in this regard.

jobs are consistent with the given limitation – that vocational experts are called to testify. That question was not asked in this case, and that omission requires remand.[12]

With respect to the plaintiff's transferable skills, she contends that the jobs identified by the vocational expert are all semi-skilled, which requires that the administrative law judge specify the skills that will be transferred. Itemized Statement at 18. She cites Social Security Ruling 82-41 in support of her position. *Id.* In this case, the administrative law judge stated that the plaintiff "has transferable skills from any past relevant work and/or transferability of skills is not an issue in this case." Record at 24. Since the administrative law judge did not identify any of the plaintiff's transferable skills, SSR 82-41 states that transferability of skills is an issue only when a claimant is found to be unable to perform his or her past relevant work and that past relevant work is found to be skilled or semiskilled. Social Security Ruling 82-41, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 at 848.

In this case, the administrative law judge did not find that the plaintiff was unable to perform her past relevant work as a certified nurse's assistant, Record at 24, but such a finding must be inferred, because he proceeds to Step 5 of the sequential evaluation process. Case law suggests that a certified nurse's assistant has no transferable skills, at least when, as here, the claimant retains the residual functional capacity only for light or sedentary work. *See, e.g., Hargrove v. Astrue*, No. 4:07-CV-123-FL, 2009 WL 863340 (E.D.N.C. Mar. 30, 2009), at *7; *Afolabi v. Astrue*, No. C.A. 07-243ML, 2008 WL 4680927 (D.R.I. Oct. 22, 2008), at *2. Accordingly, no remand on this issue is required.

---

[12] Because a remand for further vocational testimony is necessary for this reason, I do not reach the plaintiff's alternate argument that the vocational expert's testimony conflicts with the *Dictionary of Occupational Titles.*

**Conclusion**

The plaintiff requests that this action be remanded to the commissioner "with instructions to award benefits." Itemized Statement at 22. This case does not reach the standard set by the First Circuit in *Seavey v. Barnhart*, 276 F.3d 1, 11-12 (1st Cir. 2001), for such a directed remand, and that request should be denied.

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent with this opinion.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 10th day of May, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge